**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOHN MCDANIELS, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR VIOLATIONS OF** |
| | ) | **THE FEDERAL SECURITIES LAWS** |
| PCTEL, INC., M. JAY SINDER, CINDY | ) | |
| ANDREOTTI, GINA HASPILAIRE, | ) | JURY TRIAL DEMANDED |
| CYNTHIA KEITH, STEVEN LEVY, DAVID | ) | |
| NEUMANN, and ANTHONY R. ROSSABI, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff John McDaniels ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against PCTEL, Inc. ("PCTEL" or the "Company") and the members of PCTEL's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell PCTEL to Amphenol Corporation ("Amphenol") (the "Proposed Transaction").

2. On October 13, 2023, PCTEL entered into an Agreement and Plan of Merger with Amphenol and Hilltop Merger Sub, Inc. ("Merger Sub") (the "Merger Agreement"). Pursuant to

the terms of the Merger Agreement, Amphenol will acquire PCTEL for $7.00 in cash per share of PCTEL common stock.

3. On November 9, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that PCTEL stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Lincoln International LLC ("Lincoln"); (iii) potential conflicts of interest faced by Lincoln, the Company's additional financial advisor Lake Street Capital Markets LLC ("Lake Street"), and Company insiders; and (iv) the background of the Proposed Transaction.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as PCTEL stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for PCTEL stockholders to vote on the Proposed Transaction is currently scheduled for December 12, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and PCTEL's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of PCTEL common stock.

10. Defendant PCTEL is a Delaware corporation, with its principal executive offices located at 471 Brighton Drive, Bloomingdale, Illinois 60108.  PCTEL's shares trade on the Nasdaq Global Select Market under the ticker symbol "PCTI."

11. Defendant M. Jay Sinder has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Cindy Andreotti has been a director of the Company at all relevant times.

13. Defendant Gina Haspilaire has been a director of the Company at all relevant times.

14. Defendant Cynthia Keith has been a director of the Company at all relevant times.

15. Defendant Steven Levy has been a director of the Company at all relevant times.

16. Defendant David Neumann has been Chief Executive Officer and a director of the Company at all relevant times.

17. Defendant Anthony R. Rossabi has been a director of the Company at all relevant times.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19. PCTEL is a global provider of wireless technology solutions, including purpose-built Industrial Internet of Things ("IoT") devices, antenna systems, and test and measurement products. The Company designs and manufactures precision antennas and industrial IoT devices that are deployed in small cells, enterprise Wi-Fi access points, fleet management and transit systems, and in equipment and devices for the Industrial IoT. PCTEL's antenna portfolio includes Wi-Fi, Bluetooth, land mobile radio, tetra, global navigation satellite systems, cellular, industrial, scientific, medical, long range, and combination antenna solutions for use in public safety and military communications, utilities and energy, precision agriculture, smart traffic management, electric vehicle charging stations, passengers and cargo vehicles, forestry machinery, and off-road vehicles. Its Industrial IoT devices include access points, radio modules, sensor communication modules, and wireless communication sensors for use in utilities and smart grid, oil and gas, manufacturing, logistics, industrial automation, smart metering, and asset tracking markets. The Company also offers radio frequency test and measurement products that enhance the performance of wireless networks.

**The Proposed Transaction**

20. On October 13, 2023, PCTEL announced that it had entered into the Proposed Transaction, stating, in relevant part:

> BLOOMINGDALE, Ill.--(BUSINESS WIRE)--Oct. 13, 2023-- PCTEL, Inc. (Nasdaq: PCTI)( "PCTEL" or the "Company"), a leading global provider of wireless technology solutions, today announced that it has reached a definitive agreement to be acquired by Amphenol Corporation (NYSE: APH), one of the world's largest providers of high-technology interconnect, sensor and antenna solutions.
>
> **Highlights:**
>
> - Amphenol to acquire all outstanding shares of PCTEL
>
> - Deal structured as an all cash transaction for total consideration of approximately $139.7 million
>
> - PCTI stockholders to receive $7.00 per share in cash
>
> - Deal subject to PCTEL stockholder approval and customary closing conditions
>
> - PCTEL stockholders' meeting expected to be held before the end of Fiscal 2023
>
> "Today marks an exciting milestone for PCTEL as we join forces with one of the world's leading antenna solutions companies in Amphenol," said David Neumann, Chief Executive Officer of PCTEL.  "Our team has done an excellent job of growing the business, establishing a leadership position in both antenna and test & measurement (T&M) innovation, and meeting our customers' strong global demand for high reliability applications.  Amphenol is a leading global provider of interconnect, sensor and antenna solutions.  Their sustained financial strength and unique entrepreneurial culture will create a valuable home for our employees around the world.  We look forward to the accelerated growth opportunities enabled by the combination of our two companies."
>
> Jay Sinder, Chairman of PCTEL's Board of Directors, said, "This transaction follows a nearly yearlong strategic process that has been overseen and approved by the Board of Directors.  With this transaction, we are pleased to deliver cash value to our dedicated stockholders, find a well-aligned company culture for our valuable people, and position PCTEL to embark on its next phase of growth as part of an industry-leading corporation."

William J. Doherty, President, Communications Solutions Division of Amphenol Corporation added, "PCTEL and its employees are clear innovation leaders in the wireless technology solutions area, and will serve as an excellent addition to the Amphenol family. We look forward to working closely with them to leverage our existing international presence, dedicated customer base, and scale to take PCTEL's business to new and exciting heights."

**Transaction Summary**

Under the terms of the agreement, which was approved by PCTEL's Board of Directors, PCTEL stockholders will receive $7.00 in cash for each share of common stock they own. The purchase price represents a premium of over 50% to PCTEL's closing stock price on October 13, 2023, the last full trading day prior to the deal's announcement.

The transaction is expected to close in the fourth quarter of 2023 or early 2024, subject to customary closing conditions, including approval by PCTEL stockholders. Upon completion of the transaction, PCTEL will no longer be listed on any public market.

**Advisors**

Lake Street Capital Markets is serving as exclusive financial advisor and Morgan, Lewis & Bockius LLP is serving as legal counsel to PCTEL.

**The Materially Incomplete and Misleading Proxy Statement**

21.     On November 9, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that PCTEL stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Lincoln; (iii) potential conflicts of interest faced by Lincoln, the Company's additional financial advisor Lake Street, and Company insiders; and (iv) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning Financial Projections for PCTEL*

22. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

23. Critically, the Proxy Statement fails to disclose the unlevered free cash flows that the Company was forecasted to generate for fiscal years 2023 through 2028, relied upon by the Board's financial advisor Lincoln in connection with its *Discounted Cash Flow Analysis*. A discounted cash flow analysis is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[1] The unlevered free cash flows formed the basis of the *Discounted Cash Flow Analysis* of PCTEL that Lincoln performed in connection with its fairness opinion. *See* Proxy Statement at 41 ("Lincoln performed a discounted cash flow analysis of the projected unlevered free cash flows of the Company for the fiscal years 2023 through 2028").

24. The Proxy Statement includes a summary of certain of PCTEL management's financial projections for fiscal years 2023 through 2028. *See id.* at 46. Although this summary includes the Company's free cash flows, it fails to include the most important projections – the Company's unlevered free cash flows. The omission of the unlevered free cash flows renders the projections on page 46 and the summary of Lincoln's *Discounted Cash Flow Analysis* of PCTEL set forth on page 41 of the Proxy Statement incomplete and misleading, because the Proxy

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the discounted cash flow analysis method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the discounted cash flow analysis method to be the preeminent method of valuation).

Statement provides a materially incomplete and misleading valuation picture of the Company. To the extent Lincoln utilized free cash flows as the basis of its *Discounted Cash Flow Analysis*, or the "free cash flows" set forth on page 46 of the Proxy Statement are "unlevered free cash flows," the Proxy Statement must be clarified.

25. In addition, with respect to the Company's financial projections, the Proxy Statement sets forth:

> In connection with the Company's evaluation of potential strategic alternatives, in August 2023, the Company's management prepared forward-looking financial information with respect to fiscal years 2023 and 2024, taking into account the Company's results through June 2023. The financial projections were provided to the Company's financial advisor, Lake Street, reviewed by the Company's Board, and provided to [Amphenol]. These projections were subsequently updated in late September and early October 2023 to reflect additional information with respect to fiscal years 2023 and 2024.

*Id.* at 44. Yet, the Proxy Statement fails to disclose a summary of the Company's August 2023 projections for fiscal years 2023 and 2024, as well as the late September and early October 2023 updates to those projections.

*Material Misrepresentations and/or Omissions Concerning Lincoln's Financial Analyses*

26. The Proxy Statement fails to disclose material information concerning Lincoln's financial analyses.

27. With respect to Lincoln's *Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows used in the analysis, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal year unlevered free cash flows; (ii) the Company's terminal values; (iii) the inputs and assumptions underlying the discount rates ranging from 13.5% to 15.0%; (iv) the tax benefits anticipated to result from the Company's net operating losses; (v) the amount of the Company's cash and cash equivalents; (vi) the amount of the Company's capital lease obligations; and (vii) the Company's fully diluted outstanding shares.

28.     With respect to Lincoln's *Selected Public Companies Analysis* and *Selected M&A Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected companies and transactions analyzed by Lincoln, respectively; (ii) the Company's 2023P EBITDA and 2024P EBITDA; (iii) the tax benefits anticipated to result from the Company's net operating losses; (iv) the amount of the Company's cash and cash equivalents; (v) the amount of the Company's capital lease obligations; and (vi) the Company's fully diluted outstanding shares.

*Material Misrepresentations and/or Omissions Concerning Lincoln's, Lake Street's, and Company Insiders' Potential Conflicts of Interest*

29.     The Proxy Statement fails to disclose material information concerning Lincoln's and Lake Street's potential conflicts of interest.

30.     For example, according to the Proxy Statement, "Lincoln received customary compensation and indemnification" for a "prior financial advisory assignment for the Company in 2023 in connection with a proposed transaction that was terminated[.]" Id. at 44.  The Proxy Statement fails, however, to disclose the amount of compensation Lincoln received in connection with the prior financial advisory assignment.

31.     In addition, with respect to Lake Street's potential conflicts of interest, the Proxy Statement fails to disclose: (i) the amount of compensation Lake Street has received or will receive in connection with its engagement; (ii) the amount of Lake Street's compensation that is contingent upon consummation of the Proposed Transaction; and (iii) whether Lake Street has performed any services for PCTEL, Amphenol, or their respective affiliates in the prior two years, and if so, a summary of the services performed and any compensation the Company received in connection with such services.

32. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

33. Specifically, the Proxy Statement fails to disclose whether any members of Company management have secured, or are anticipated to secure, positions with the combined company. Notably, the October 13, 2023, press release announcing the Proposed Transaction quotes Amphenol's President, Communications Solutions Division, William J. Doherty, as stating, "PCTEL and its employees are clear innovation leaders in the wireless technology solutions area, and will serve as an excellent addition to the Amphenol family. We look forward to working closely with them…." The Proxy Statement further fails to disclose whether any of Amphenol's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation, as well as the details of any discussions or negotiations concerning management participation in the combined company.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

34. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

35. According to the Proxy Statement, during the strategic process, the Company entered into confidentiality agreements with parties identified in the Proxy Statement as "Party B," "Party C," "Party D," and "Party E." *See id.* at 27-29. The Proxy Statement fails, however, to disclose the details of the confidentiality agreements the Company entered into with these prospective bidders, including whether any of the confidentiality agreements contain "don't ask, don't waive" standstill provisions currently precluding any party from submitting a topping bid for the Company.

36. In sum, the omission of the above-referenced information renders statements in the "Forward-Looking Financial Information," "Financial Projections," "Opinion of Lincoln International LLC," "Interests of Directors and Executive Officers in the Merger," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of PCTEL will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and PCTEL**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. PCTEL is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of PCTEL within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of PCTEL and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

12

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of PCTEL, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 13, 2023

LONG LAW, LLC

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com